1  JAMES R. OLSON, ESQ.
   Nevada Bar No. 000116
2  MAX E. CORRICK II, ESQ.
   Nevada Bar No. 006609
3  MATTHEW C. WOLF, ESQ.
   Nevada Bar No. 010801
4  OLSON, CANNON, GORMLEY & DESRUISSEAUX
   9950 West Cheyenne Avenue
5  Las Vegas, NV 89129
   Telephone: 702/384-4012
6  jolson@ocgd.com
   mcorrick@ocgd.com
7  Attorneys for Plaintiff
   FARMERS INSURANCE COMPANY
8  OF OREGON

9            UNITED STATES DISTRICT COURT

10              DISTRICT OF NEVADA

11  FARMERS INSURANCE COMPANY OF      )  CASE NO. 2:10-CV-00067-RCJ-PAL
    OREGON, an Oregon corporation     )
12                                    )
                                      )
13          Plaintiff,                )
                                      )  OPPOSITION TO DEFENDANT
14  v.                                )  BRAD HOPKINS' MOTION TO
                                      )  DISMISS COMPLAINT
15  BRAD HOPKINS, a Nevada resident; DOES I )
    through X, inclusive; and ROE     )
16  CORPORATIONS 1 through 100, inclusive, )
                                      )
17          Defendants.               )
    _____ )

18      Plaintiff Farmers Insurance Company of Oregon ("Farmers"), through its counsel, OLSON,

19  CANNON, GORMLEY & DESRUISSEAUX, hereby submits its **Opposition to Defendant Brad**

20  **Hopkin's Motion to Dismiss Complaint**.  This Opposition is based upon this written Opposition,

21  the attached memorandum of points and authorities, all pleadings and papers on file herewith,

22  / / /

23  / / /

24  / / /

25  / / /

26

1  together with any arguments raised during hearing.

2       DATED this ___2___ day of June, 2010.

3                                    OLSON, CANNON
                                     GORMLEY & DESRUISSEAUX

4

5       By:_____
                JAMES R. OLSON, ESQ.
6               Nevada Bar No. 000116
                MAX E. CORRICK II, ESQ.
7               Nevada Bar No. 006609
                MATTHEW C. WOLF, ESQ.
8               Nevada Bar No. 010801
                9950 West Cheyenne Avenue
9               Las Vegas, NV 89129
                jolson@ocgd.com
10              mcorrick@ocgd.com
                Attorneys for Plaintiff
11              FARMERS INSURANCE COMPANY
                OF OREGON

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

Plaintiff Farmers Ins. Co. of Oregon (hereinafter, Farmers) respectfully submits this Opposition to defendant Brad Hopkins' (hereinafter, Hopkins) Motion to Dismiss filed on May 17, 2010 (Doc. # 6). Pursuant to his Motion, Hopkins is asking this Honorable Court to dismiss Farmers' complaint for declaratory relief for three reasons: (1) Farmers allegedly lacks standing to pursue an action for declaratory judgment; (2) the action allegedly is not ripe for adjudication; and (3) Farmers allegedly failed to join a necessary and indispensable party under F.R.C.P. 19. As demonstrated herein, each of these arguments is unpersuasive and without merit.

As for standing, the issue entails "... the determination of whether a specific person is the proper party to bring a matter to the court for adjudication."[1] In its complaint, Farmers is seeking declaratory judgment adjudicating and decreeing that Farmers has satisfied all contractual obligations and owes no such further obligations under an automobile insurance policy (hereinafter, Policy) issued to Hopkins on or around August 15, 2008. Regrettably, this action has been necessitated by the fact Hopkins has made numerous demands seeking compensation from Farmers on the mistaken assumption that Farmers owed him a contractual obligation to maintain his Chrysler vehicle after an accident in January 2009, notwithstanding the fact Farmers tendered and Hopkins accepted $10,493.90 for the "total loss" of the vehicle. *See* Exhibit 1, Demand Letter. It is inconceivable how Farmers could not be the "proper party to bring [this] matter to the court for adjudication." Hence, the Motion's argument on standing is without merit.

As for ripeness, this matter is clearly fit for judicial review for numerous reasons. First, there is an actual and live contractual dispute between Farmers and Hopkins with regards to Farmers'

---

1. Erwin Chemerinksy, *Federal Jurisdiction* 57 (4th ed. 2003); *see also Warth v. Seldin*, 422 U.S. 490, 498 (1975) ("In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues.").

duties under the Policy. Hopkins' allegations to the contrary are without merit; indeed, Hopkins'

own demands add credence to the existence of an actual and live contractual dispute between the

parties. *See* Exhibit 1, Demand Letter. Second, this action is ripe because Farmers faces an

imminent threat of litigation by Hopkins. "The threat of litigation can establish a justiciable

controversy if it is specific and concrete."[2] In fact, the very purpose of the Declaratory Judgment Act

is to relieve parties such as Farmers from the threat of imminent litigation:

> The Declaratory Judgment Act was designed to relieve potential defendants from the
> Damoclean threat of impending litigation which a harassing adversary might brandish, while
> initiating suit at his leisure or never. The Act permits parties so situated to forestall the
> accrual of potential damages by suing for a declaratory judgment, once the adverse positions
> have crystallized and the conflict of interests is real and immediate.[3]

Again, Hopkins cannot dispute this fact, for in his Motion, he actually acknowledges that litigation

with regards to the Policy is imminent. *See* Mtn. at 6:6-7 ("... it seems clear that Mr. Hopkins will

be pursuing FARMERS for sabotaging his product liability claim."); *see also id.* at 6:26-27

("FARMERS was Mr. Hopkins' insurance company; but now as they have sabotaged [sic] his

personal injury claim, *the parties are clearly adverse*.") (emphasis added).

Quite frankly, the reality is that Farmers beat Hopkins in a race to the courthouse by

instituting its instant action for declaratory relief before he could file an action for bad faith, and now

Hopkins ironically seeks dismissal of the very action he threatened to file against Farmers. As is

___

2. *Shields v. Norton*, 289 F. 3d 832, 835 (5th Cir. 2002) (emphasis added); *see also Williams v. Thomas*, 2010 WL 1005278 at *2 (D. Or. March 11, 2010) ("To meet the ripeness standard, petitioner must demonstrate a specific present harm, **or the threat of specific future harm**.") (emphasis added); *D'Andrea v. University of Hawaii*, 686 F.Supp.2d 1079, __ (D. Hawaii 2010), *quoting Maldonado v. Morales*, 556 F.3d 1037, 1044 (9th Cir.2009) ("At the time Plaintiff filed the First Action, the University had threatened to suspend him for both fourteen and thirty days as well as terminate him for alleged violations of the Executive Policy. Such 'genuine threat of enforcement' [are] sufficient to render a claim ripe for review.'"); *Nucor Corp. v. Aceros Y Maquilas De Occidente*, 28 F. 3d 572, 578-9 (7th Cir. 1994) ("We are in full agreement with the district court's analysis. First, we agree that the dispute clearly presented a ripe controversy. Once Aceros sent its notice letter of June 17, 1991, the disagreement was no longer an abstract question.").
3. *Societe de Conditionnement en Aluminium v. Hunter Engineering Co., Inc.*, 655 F.2d 938, 943 (9th cir. 1981), *quoting Japan Gas Lighter Assoc. v. Ronson Corp.*, 257 F.Supp. 219, 237 (D.N.J.1966).

transparent, the underlying goal of Hopkins' Motion is to convince this Honorable Court to dismiss Farmers' action from federal court so that he may institute this very same action against Farmers in Nevada state court. Such forum shopping and manipulation of the judicial system simply should not be tolerated.

As for the joinder of a necessary and indispensable party, Hopkins alleges Farmers' complaint should be dismissed under F.R.C.P. 19 because Farmers did not join the bankrupt entity Chrysler LLC, the manufacturer of his automobile, or its U.S. Trustee. This argument completely lacks merit. It is irrefutable that neither Chrysler LLC nor its U.S. Trustee are necessary parties, for neither party has a legal interest under the Policy. In more simple terms, this Honorable Court may fully adjudicate the legal rights and relations of Hopkins and Farmers in regards to the Policy without the participation of Chrysler LLC or its U.S. Trustee. Indeed, on or around December 7, 2009, Hopkins sent Farmers a demand letter seeking compensation for "tortious breach of contract," breach of the covenant of good faith and fair dealing, negligent spoliation, and breach of fiduciary duty. *See* Ex. 1. Interestingly, Hopkins did <u>not</u> "carbon copy" (cc) Chrysler LLC or its U.S. Trustee on his demand letter. This is affirmative evidence that at that time, Hopkins believed the actual and live contractual dispute between Farmers and Hopkins could be resolved without the participation of Chrysler LLC or its U.S. Trustee.

Nonetheless, even in the highly unlikely event this Honorable Court concludes Chrysler LLC and/or its U.S. Trustee are necessary parties, the Motion shoots itself in the foot by expressly conceding the joinder of the U.S. Trustee to this action would be practicable. *See* Mtn. at 8:19-20 ("The US Trustee for Chrysler, LLC is certainly an individual *who may be reasonably joined.*") (emphasis added). Hence, even in the highly unlikely event this Honorable Court concludes Old Chrysler and/or its U.S. Trustee are necessary parties, dismissal of Farmers' complaint would still not be warranted, for per the Motion's own admissions, this Honorable Court may simply order joinder of the U.S. Trustee.

Wherefore, for the numerous, compelling reasons offered herein, this Honorable Court

1  should deny the Motion in its entirety.

2                                    **II.**

3                         **FACTUAL BACKGROUND**

4       This is an action for declaratory relief brought by plaintiff/insurer Farmers against

5  defendant/insured Hopkins.  Pursuant to this action, Farmers is seeking judgment from this

6  Honorable Court adjudicating and declaring (a) Farmers has fulfilled its contractual obligations to

7  Hopkins and owes him no further contractual obligations, and (b) the bankruptcy of Chrysler LLC

8  bars any potential claims for damages Hopkins may assert against Farmers.  The facts of this action

9  are as follows.[4]

10      From August 15, 2008, until February 15, 2009, Hopkins maintained an automobile

11  insurance policy through Farmers.  The policy provided personal automobile coverage subject to its

12  terms, conditions, limitations, definitions, exclusions, and restrictions.  The limits of the policy were

13  $50,000.00/100,000.00 for bodily injury, $50,000.00 for property damage, and $50,000.00 for

14  uninsured/underinsured motorist ("UM/UIM") coverage.  The insured vehicle was manufactured by

15  Chrysler LLC.

16      On January 6, 2009, Hopkins was involved in an automobile accident.  Hopkins submitted

17  a claim to Farmers pursuant to the UM/UIM provisions of his policy, and Farmers subsequently

18  tendered the full amount of the UM/UIM coverage, $50,000.00.  Additionally, Farmers paid

19  $10,493.90 to Hopkins under the policy's property damage coverage to compensate him for the "total

20  loss" of his Chrysler vehicle.  In exchange for this sum of $10,493.90, Farmers took full possession

21  and ownership of the Chrysler vehicle.  It should be noted Hopkins readily accepted both the

22  $50,000.00 and the $10,493.90 payments.

23      Notwithstanding his acceptance of the $10,493.90 payment for the "total loss" of his Chrysler

24  vehicle, Hopkins sent a demand letter to Farmers on or around January 14, 2009, demanding Farmers

25  maintain and not sell the vehicle.  Hopkins made this demand because he allegedly was

26  _____

4.      All of the facts set forth herein are contained in Farmers' complaint.

1   contemplating a products liability action against Chrysler in relation to his accident on January 6,

2   2009. Farmers maintained that because it paid Hopkins $10,493.90 for the "total loss" of his vehicle

3   (which Hopkins readily accepted), Farmers had exclusive ownership of said vehicle and had no

4   contractual obligation to maintain same. Thereafter, Hopkins made demands upon Farmers in

5   excess of $75,000.00 for allegedly not keeping possession of the subject automobile, notwithstanding

6   the fact Farmers exclusively owned said automobile by virtue of Hopkins' acceptance of the

7   $10,493.90 payment.

8   On April 30, 2009, Chrysler LLC filed for Chapter 11 Bankruptcy. As part of its

9   reorganization plan, Chrysler LLC sought court approval of an asset-sale transaction pursuant to 11

10  U.S.C. § 363. *In re Chrysler LLC*, 576 F. 3d 108, 111 (2nd Cir. 2009). The terms of the requested

11  sale were set forth in a Master Transaction Agreement dated April 30, 2009. *Id.* Under those terms,

12  substantially all of the operating assets of Chrysler LLC (including but not limited to manufacturing

13  plants, brand names, certain dealer and supplier relationships) were transferred to a new entity named

14  Chrysler Group LLC. *Id.* at 112. In court records, Chrysler LLC is often referred to as "Old

15  Chrysler" and Chrysler Group LLC as "New Chrysler." In exchange for receiving these assets, New

16  Chrysler agreed to assume certain liabilities from Old Chrysler, in addition to $2 billion in cash. *Id.*

17  Furthermore, Fiat S.p.A purchased a 20% equity interest in New Chrysler, along with the right to

18  purchase up to 51% of New Chrysler pending New Chrysler's payment of certain debts. *Id.*

19  The bankruptcy court approved the above sale on June 1, 2009, and the sale closed on June

20  10, 2009. *Id.* at 112 ("Upon extensive findings of fact and conclusions of law, the bankruptcy court

21  approved the Sale by order dated June 1, 2009."). One of the terms of the sale was that the "Sale

22  Order extinguished the right to pursue claims 'on any theory of successor or transferee liability,

23  whether known or unknown as of the Closing, now existing or hereafter arising, asserted or

24  unasserted, fixed or contingent, liquidated or unliquidated." In other words, it extinguished any

25  present and future products liability claims associated with any vehicles manufactured by Old

26  Chrysler.

Subsequently, a number of special interest groups challenged the bankruptcy court's approval of this sale, including but not limited to present and future tort claimants like Hopkins.[5]  Section 363(f) of the Bankruptcy Code provides, in relevant part, that a "trustee may sell property ... free and clear of any interest in such property." *Id.* at 123-4, *citing* 11 U.S.C. § 363(f).  Pursuant to this section of the Bankruptcy Code, New Chrysler purchased the assets clear of any liability for product defects in vehicles produced by Old Chrysler. *Id.*  The Ad Hoc Committee of Consumer-Victims of Chrysler LLC and William Lovitz challenged the extinguishment of any products liability claims against New Chrysler for vehicles manufactured by Old Chrysler, but the U.S. Court of Appeals for the Second Circuit affirmed the bankruptcy court's decision to permit the sale free and clear of said claims:

> The possibility of transferring assets free and clear of existing tort liability was a critical inducement to the Sale. ... It is the transfer of Old Chrysler's tangible and intellectual property to New Chrysler that could lead to successor liability (where applicable under state law) in the absence of the Sale Order's liability provisions. Because appellants' claims arose from Old Chrysler's property, § 363(f) permitted the bankruptcy court to authorize the Sale free and clear of appellants' interest in the property.

*Id.* at 126.  As demonstrated below, the Second Circuit declined to address the extinguishment of future claims for incidents that occur *after* the sale in June 2009:

> The Sale Order extinguished the right to pursue claims "on any theory of successor or transferee liability. whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated." Sale Order at 40-41. This provision is challenged on the grounds that: (1) the Sale Order violates the due process rights of future claimants by extinguishing claims without providing notice; (2) a bankruptcy court is not empowered to trump state successor liability law; (3) future, unidentified claimants with unquantifiable interests could not be compelled "to accept a money satisfaction," 11 U.S.C. § 363(f)(5); and (4) future causes of action by unidentified plaintiffs based on unknown events cannot be classified as "claims" under the Bankruptcy Code.

---

5.      *Id.* at 123 ("Finally, several objectors appeal from that portion of the Sale Order extinguishing all existing and future claims against New Chrysler, that '(a) arose prior to the Closing Date, (b) relate to the production of vehicles prior to the Closing Date or © otherwise [are] assertable against the Debtors or [are] related to the Purchased Assets prior to the closing date.' Sale Order at 40. The objectors can be divided into three groups: (1) plaintiffs with existing product liability claims against Chrysler; (2) plaintiffs with existing asbestos-related claims against Chrysler; and (3) lawyers undertaking to act on behalf of claimants who, although presently unknown and unidentified, might have claims in the future arising from Old Chrysler's production of vehicles.").

1   We affirm this aspect of the bankruptcy court's decision insofar as it constituted a valid
    exercise of authority under the Bankruptcy Code. However, we decline to delineate the scope
2   of the bankruptcy court's authority to extinguish future claims, until such time as we are
    presented with an actual claim for an injury that is caused by Old Chrysler, **that occurs *after***
3   **the Sale**, and that is cognizable under state successor liability law.

4   *Id.* at 127 (emphasis added). Nonetheless, the above portion of the *In re Chrysler LLC* opinion does

5   not apply to Hopkins because his accident occurred in January 2009. Hence, the bankruptcy of Old

6   Chrysler bars any potential claims for liability Hopkins may bring against Farmers.

7           On or about December 7, 2009, Hopkins made a demand against Farmers for "tortious breach

8   of contract," breach of the covenant of good faith and fair dealing, negligent spoliation, and breach

9   of fiduciary duty. *See* Exhibit 1, Demand Letter. These potential claims were premised upon the

10  allegation that the subject vehicle is no longer in Farmers' possession, thereby limiting Hopkins'

11  ability to file a product liability action against Chrysler LLC. However, because it paid Hopkins

12  $10,493.90 for the "total loss" of the vehicle, Farmers has exclusive ownership and possession of

13  the vehicle and has no contractual obligation to maintain said vehicle for Hopkins. Furthermore, any

14  potential claims against Farmers are barred by the bankruptcy of Old Chrysler.

15          Due to Hopkins' demand, Farmers initiated this instant action for declaratory relief to obtain

16  judgment from this Honorable Court adjudicating and declaring (a) Farmers fulfilled all contractual

17  obligations to Hopkins by paying the limits of its UM/UIM coverage and by paying the "total loss"

18  value for the subject vehicle, (b) no other obligation exists on behalf of Farmers to Hopkins, and as

19  owner of the subject vehicle, Farmers has no duty to maintain the vehicle for a third party's litigation

20  purposes, and © the bankruptcy of Chrysler LLC bars any potential claims for damages Hopkins may

21  assert against Farmers.

22          Pursuant to his instant  Motion, Hopkins now moves this Honorable Court to dismiss

23  Farmer's complaint. For the reasons set forth herein, the Motion should be denied in its entirety.

24  / / /

25  / / /

26  / / /

Page 9 of 26

# III.

## STANDARD OF REVIEW FOR MOTION TO DISMISS

On its face, the Motion is expressly limited to Rule 12(h)(3) and Rule 12(b)(7) of the Federal Rules of Civil Procedure (F.R.C.P.). *See* Mtn. at 1:20-21.

### A.   STANDARD OF REVIEW FOR A MOTION TO DISMISS UNDER F.R.C.P. 12(h)(3) FOR LACK OF JURISDICTION

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Rasul v. Bush*, 542 U.S. 466, 489 (2004), *quoting Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The court is presumed to lack jurisdiction unless the contrary appears affirmatively from the record. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006).  Consistent with these basic jurisdictional precepts, the Ninth Circuit has articulated the standard for surviving a motion to dismiss for lack of jurisdiction as follows: "[w]hen subject matter jurisdiction is challenged under Federal Rule of Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion. A plaintiff suing in a federal court must show in his pleading, affirmatively and distinctly, the existence of whatever is essential to federal jurisdiction, and, if he does not do so, the court, on having the defect called to its attention or on discovering the same, must dismiss the case, unless the defect be corrected by amendment." *Tosco Corp. v. Communities for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001) (citations and internal quotations omitted).

A Rule 12(b)(1) challenge to subject matter jurisdiction can be "facial," in which the Court assumes the plaintiff's factual allegations are true and draws all reasonable inferences in its favor. *Doe v. See*, 557 F.3d 1066, 1073 (9th Cir. 2009); *Castaneda v. United States*, 546 F.3d 682, 684 n. 1 (9th Cir. 2008). Alternatively, the motion may be a "factual" or "speaking" motion, in which the movant may submit materials outside the pleadings to support its motion. In that case, "[i]t then becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter

1  jurisdiction." *Colwell v. Dep't of Health and Human Servs.*, 558 F.3d 1112, 1121 (9th Cir. 2009),

2  *quoting St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989). "If the court determines at any

3  time that it lacks subject-matter jurisdiction, the court must dismiss the action." F.R.C.P. 12(h)(3).

4  **B.    STANDARD OF REVIEW FOR A MOTION TO DISMISS UNDER F.R.C.P. 12(B)(7)
          FOR FAILURE TO JOIN AN INDISPENSABLE PARTY**

5          The party urging dismissal pursuant to F.R.C.P. 12(b)(7) bears the burden of showing an

6  absent party should be joined under Rule 19. *West Peninsular Title Co. v. Palm Beach County*, 41

7  F.3d 1490, 1492 (11th Cir. 1995), *citing* 5A Wright & Miller, *Federal Practice and Procedure* §

8  1359 (3d ed. 1997).   The proponent of a motion to dismiss under 12(b)(7) has the burden of

9  producing evidence showing the nature of the interest possessed by an absent party and that the

10  protection of that interest will be impaired by the absence. *Ilan-Gat Eng'rs, Ltd. v. Antigua Int'l

11  Bank*, 659 F.2d 234, 242 (D.C.Cir.1981) ("In this context, we note that the burden was on the

12  defendants, as the moving party, to show that continuation of the action in AIB's absence would

13  prejudice them. ...., the court should have placed on the defendants the burden of proving that AIB

14  had the requisite number of shareholders who were not Antiguan officials.") (internal citations

15  omitted); *see also Martin v. Local 147, Int'l Bro. of Painters*, 775 F.Supp. 235, 236-37

16  (N.D.Ill.1991); *Ashley v. American Airlines, Inc.*, 738 F.Supp. 783, 788 (S.D.N.Y.1990). The

17  proponent's burden may be satisfied by providing "affidavits of persons having knowledge of these

18  interests as well as other relevant extra-pleading evidence." *Martin*, 775 F.Supp. at 236, *quoting* 5A

19  Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* Sec. 1359, at 427 (1990).

20                                                   **IV.**

21                                          **LEGAL ARGUMENTS**

22  **A.    THIS HONORABLE COURT HAS DIVERSITY JURISDICTION**

23          The Motion alleges this Honorable Court lacks subject-matter jurisdiction. *See* Mtn. at 1:23.

24  The Motion's jurisdiction argument is a mere extension of its arguments on standing and ripeness.

25  *Id.* at 4:7-8 ("Lack of standing is a defect in subject-matter jurisdiction and may properly be

26

challenged under Rule 12(b)(1)."). Herein, the Opposition will demonstrate the Motion's arguments on standing and ripeness are without merit. However, to eliminate at the onset any possible confusion on whether this Honorable Court has jurisdiction, it must be noted this Honorable Court has diversity jurisdiction, as alleged in section VI of Farmers' complaint.

It is well-settled that federal courts may entertain declaratory relief actions on grounds of diversity. *See, e.g., American Cas. Co. of Reading, Pennsylvania v. Krieger*, 181 F.3d 1113, 1119-20 (9th Cir. 1999) (affirming trial court's denial of motion to dismiss declaratory relief action) ("We hold that the district court did not abuse its discretion in declining to dismiss the declaratory judgment action."). Notably, the Motion completely fails to contest diversify jurisdiction. As Hopkins is well-aware, it is wholly impermissible to raise new issues and arguments in a reply brief.[6]

6.      *See, e.g., Kansas Wastewater, Inc. v. Alliant Techsystems, Inc.*, 257 F.Supp.2d 1344, 1352 n.7 (D. Kan. 2003), *citing Boilermaker-Blacksmith Nat. Pension Fund v. Gendron*, 67 F.Supp.2d 1250, 1257 n. 4 (D. Kan.1999); *Plotner v. AT & T Corp.*, 224 F.3d 1161, 1175 (10th Cir. 2000) ("Generally, a party is prohibited from raising new arguments and issues in a reply brief, and a court should not consider issues first raised in a reply brief.") (internal citations omitted); *see also Hall v. Cropmate*, 887 F.Supp. 1193, 1199 (S.D. Ind. 1995), *citing Rockrohr v. Norfolk S. Corp.*, 797 F. Supp. 664, 665 (N.D. Ind. 1992); *Wilson v. O'Leary*, 895 F.2d 378, 384 (7th Cir.1990) ("It is well established that new arguments may not be first raised in a reply brief-a party must state all of its reasons in support of a motion the first time around."); *Bovee v. Coopers & Lybrand*, 216 F.R.D. 596, 600 (S.D. Ohio 200) (striking Affidavit presented for first time in reply brief in support of motion to certify class action); *Torgeson v. Unum Life Ins. Co. of America*, 466 F.Supp.2d 1096, 1121 N.D. Iowa 2006) ("Torgeson asserted for the first time in her reply that less deferential review is warranted in this case, in part, because of the inherent conflict of interest between Unum's responsibility to pay claims from its own assets and its administration of the LTD benefits plan at issue here. Ordinarily, inclusion of a new argument in a reply brief is improper as a matter of motion practice in this court."); *Cuba-Diaz v. Town of Windham*, 274 F.Supp.2d 221, 230 (D. Conn. 2003), *quoting Ernst Haas Studio, Inc. v. Palm Press, Inc.*, 164 F.3d 110, 112 (2d Cir.1999) ("While the fact that Officer Coriaty's signature appears on Cuba-Diaz's arrest record containing the fugitive from justice charge appears to foreclose this claim, the Court does not address the issue because 'new arguments may not be made in a reply brief.'"); *Brown v. Hyatt Corp.*, 128 F.Supp.2d 697, 702 (D. Hawaii 2000) ("Plaintiffs did not raise this argument in their motion and new arguments in a reply brief are disregarded. Defendant has not had an opportunity to respond."); *Scott v. Office of Alexander*, 522 F.Supp.2d 262, 274 (D. D.C. 2007), *citing Herbert v. National Academy of Sciences*, 974 F.2d 192, 196 (D.C.Cir.1992); *Golden Pacific Bancorp v. Clarke*, 837 F.2d 509, 513 (D.C.Cir.1988) ("One final issue remains. In Defendant's Reply to Plaintiff's Opposition, Defendant for the first time argues that the Speech or Debate Clause should apply to Counts I and IV of Plaintiff's Complaint. Defendant did not make these claims in its original Motions where it had

1   This rule applies equally to oral arguments.[7] Hence, the fact that this Honorable Court has diversity

2   jurisdiction is not at issue.

3   **B.    FARMERS HAS STANDING TO SEEK DECLARATORY RELIEF**

4          An action for declaratory judgment is intended to determine the meaning of a law or a

5   contract and the rights of the parties with respect to such law or contract. *See, e.g., Raynes v. City*

6   *of Great Falls*, 696 P.2d 423, 427 (Mont. 1985). As is axiomatic, a plaintiff must have standing to

7   bring an action for declaratory judgment. *See, e.g.*, 22A Am. Jur. 2d *Declaratory Judgments* § 21

8   (2003).  At its heart, the issue of standing involves "… the determination of whether a specific

9   person is the proper party to bring a matter to the court for adjudication." Erwin Chemerinksy,

10  *Federal Jurisdiction* 57 (4th ed. 2003); *see also Warth v. Seldin*, 422 U.S. 490, 498 (1975) ("In

11  essence the question of standing is whether the litigant is entitled to have the court decide the merits

12  of the dispute or of particular issues.").

13         The United States Supreme Court has stated the irreducible constitutional minimum of

14  standing contains three elements: (1) the plaintiff must have suffered an "injury in fact" - *i.e.*, an

15  invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or

16  imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury

17  and the conduct complained of - *i.e.*, the injury has to be "fairly … trace[able] to the challenged

18  _____

19  limited its assertion of the Speech or Debate Clause to Plaintiff's retaliation claim (Count III).
    Defendant's new claims are not properly before the Court and have not been fully briefed by the

20  Parties. It is a well-settled prudential doctrine that courts generally will not entertain new arguments
    first raised in a reply brief.") (internal citations omitted).

21  7.     *See, e.g., Anderson v. American Airlines, Inc.*, 2010 WL 335719 at *2 (N.D. Cal. Jan. 22,
    2010) ("At the hearing, defendant made two arguments that were not asserted in its motion to

22  dismiss. Defendant argued that claims based on the $15-$25-$100 fee were barred by res judicata
    because (1) the $15-$25-$100 fee was addressed in a deposition for the September complaint and

23  (2) because the plaintiff lacked standing. A reference in a deposition to some matters does not mean
    it is in play in the complaint. Most importantly, **these arguments are inadmissible now because**

24  **they were not raised in defendant's own motion to dismiss.**") (emphasis added); *see also Manago*

25  *v. Williams*, 2010 WL 681672 at *2, n. 1 (E.D. Cal. Feb. 24, 2010) (rejecting plaintiff's argument
    "that he has continued to receive inadequate mental healthcare" because "these arguments were not

26  raised in the initial motion, and the court declines to address them here.")

action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court;" and (3) it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-1 (1992) (internal citations omitted); *see also Newdow v. Lefevre*, 598 F.3d 638, 642 (9th Cir. 2010) ("The 'irreducible constitutional minimum of standing' contains three elements: (1) injury-in-fact; (2) causation; and (3) redressability.").

**1.     Farmers Has Suffered an Injury-in-Fact Because this Matter is Ripe for Adjudication**

To have suffered an injury-in-fact, a plaintiff must have suffered an invasion of a legally protectable interest that is concrete and particularized, and actual or imminent, as opposed to conjectural or hypothetical. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The "injury-in-fact" analysis often converges with the ripeness analysis.[8]  Hence, this requirement will be addressed in the section herein on ripeness.

**2.     There is a Sufficient Nexus Between the Conduct of the Defendant and the Complaint**

---

8.     *See, e.g., Elend v. Basham*, 471 F.3d 1199, 1205 (11th Cir. 2006) ("It is by now axiomatic that standing requires the plaintiff to demonstrate injury in fact, causation, and redressability. **It is the first element, injury in fact, that most often converges with ripeness.** If an action for prospective relief is not ripe because the factual predicate for the injury has not fully materialized, then it generally will not contain a concrete injury requisite for standing.") (emphasis added); *see also Airline Professionals Association of Intern. Broth. of Teamsters, Local Union No. Airline Professionals Association of Intern. Broth. of Teamsters, Local Union No. 1224, AFL-CIO v. Airborne, Inc.*, 332 F.3d 983, 988 (6th Cir. 2003) ("There is unquestionably some overlap between ripeness and standing.  When the injury alleged is not actual but merely threatened, standing and ripeness become more difficult to distinguish.") (internal citation omitted); *Alaska Right to Life Political Action Committee v. Feldman*, 504 F.3d 840, 849 n.9 (9th Cir. 2007) (" The constitutional component of ripeness often overlaps with the injury-in-fact prong of Article III standing."); *In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation*, 643 F.Supp.2d 446, 454 (S.D.N.Y. 2009) ("In this respect, ripeness overlaps with standing, and a showing that a claim is sufficiently 'actual and imminent' to constitute an Article III injury in fact is normally sufficient to establish that the claim is constitutionally ripe for review."); *Phillips Puerto Rico Core, Inc. v. Almodovar*, 681 F.Supp. 119, 122 (D.P.R. 1988) ("When the injury is not actual but threatened, the concepts of standing and ripeness merge.  A litigant may lack standing because what has happened to him has not developed into an injury in fact and that is the core of the ripeness doctrine.").

In this instant matter, there is an actual and live contractual dispute between Farmers and Hopkins. Notably, the Motion expressly acknowledges same. *See* Mtn. at 6:6-7 ("... it seems clear that Mr. Hopkins will be pursuing FARMERS for sabotaging his product liability claim."); *see also id.* at 6:26-27 ("FARMERS was Mr. Hopkins' insurance company; but now as they have sabotaged [sic] his personal injury claim, the parties are clearly adverse."). Here, there is clearly a sufficient nexus between the complaint and Hopkins' conduct - *i.e.*, his insistence that Farmers had a contractual obligation to maintain his vehicle even after payment of $10,493.90 for the "total loss" of the vehicle, along with his demand on or about December 7, 2009, for "tortious breach of contract," breach of the covenant of good faith and fair dealing, negligent spoliation, and breach of fiduciary duty. Hence, this element is satisfied.

### 3. It is Certain Declaratory Relief Would Resolve the Actual and Live Contractual Dispute Between Farmers and Hopkins Under the Policy

The final requirement for standing is that it be "likely" the controversy would be redressed by a favorable decision. Here, there is no doubt the declaratory relief sought by Farmers would resolve the actual and live contractual dispute between Farmers and Hopkins. Presently, Farmers and Hopkins are engaged in a dispute as to whether Farmers had a contractual duty under the Policy to preserve the vehicle notwithstanding the payment of $10,493.90 for the "total loss" of the vehicle. If this Honorable Court were to conclude Farmers had no such duty, then it would resolve this ongoing contractual dispute and extinguish any potential claims for "tortious breach of contract," breach of the covenant of good faith and fair dealing, negligent spoliation, and/or breach of fiduciary duty. Hence, it is certain a favorable decision would resolve the actual and live contractual dispute between Farmers and Hopkins.

### C. DUE TO BOTH (A) THE ACTUAL AND LIVE CONTRACTUAL DISPUTE, AND (B) THE IMMINENT THREAT OF LITIGATION BY HOPKINS, THIS MATTER IS RIPE FOR JUDICIAL REVIEW

As the Motion correctly notes, ripeness entails consideration of two factors: (1) the fitness of the issues for judicial review, and (2) the hardship that would arise without judicial relief. *See*

Mtn. at 5:13-17, *citing Abbott Laboratories v. Gardner*, 387 US 136, 149 (1967) ("The problem [of ripeness] is best seen in a twofold aspect, requiring us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration."). Here, there is no doubt the actual and live contractual dispute is ripe for judicial review.

### 1.      This Matter is Fit for Judicial Review

#### a.      This Controversy is Ripe for Judicial Review Due to the Actual and Live Contractual Dispute Between the Parties

In considering an action for declaratory relief, a court may determine the legal rights of the parties prior to injury if there is a legitimate dispute. *Step-Saver Data Systems, Inc. v. Wyse Technology*, 912 F. 2d 643, 647 (3rd Cir. 1990), *citing Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941) ("The discretionary power to determine the rights of parties before injury has actually happened cannot be exercised unless there is a legitimate dispute between the parties."). In this instant matter, it is irrefutable there is an actual and live contractual dispute between Farmers and Hopkins ripe for judicial review. Indeed, the Motion's own admissions support this fact. *See* Mtn. at 6:6-7 ("... **it seems clear that Mr. Hopkins will be pursuing FARMERS** for sabotaging his product liability claim."); *see also id.* at 6:26-27 ("FARMERS was Mr. Hopkins' insurance company; but now as they have sabotaged [sic] his personal injury claim, **the parties are clearly adverse.**") (emphasis added). Because of this actual and live contractual dispute, this matter presents a controversy fit for judicial review. If this Honorable Court were to withhold judicial intervention, then Hopkins will continue to demand compensation on the grounds Farmers allegedly owed him a contractual duty to maintain his vehicle. The Motion even acknowledges same. *Id.* at 7:7-8 ("If this Court does not grant a Declaratory Judgement, the case will continue on as is."). In the converse, judicial intervention would permanently resolve this contractual dispute. Hence, this matter is fit for judicial review.

#### b.      This Controversy is Ripe for Judicial Review Due to the Imminent Threat of Litigation by Hopkins

In addition the existence of an actual and live contractual dispute, there is a second, mutually

1   exclusive reason why this controversy is fit for judicial review. Namely, Farmers faces an imminent

2   threat of litigation from Hopkins. **"The threat of litigation can establish a justiciable controversy**

3   **if it is specific and concrete."**[9]  In fact, the very purpose of the Declaratory Judgment Act is to

4   relieve parties such as Farmers from the threat of imminent litigation:

> The Declaratory Judgment Act was designed to relieve potential defendants from the
> Damoclean threat of impending litigation which a harassing adversary might brandish, while
> initiating suit at his leisure or never. The Act permits parties so situated to forestall the
> accrual of potential damages by suing for a declaratory judgment, once the adverse positions
> have crystallized and the conflict of interests is real and immediate.

8   *Societe de Conditionnement en Aluminium v. Hunter Engineering Co., Inc.*, 655 F.2d 938, 943 (9th

9   cir. 1981), *quoting Japan Gas Lighter Assoc. v. Ronson Corp.*, 257 F.Supp. 219, 237 (D.N.J.1966).

10       Though the Motion alleges it is uncertain whether Hopkins will pursue litigation against

11  Farmers, these allegations ring hollow, for the Motion explicitly admits "... **it seems clear that Mr.**

12  **Hopkins will be pursuing FARMERS** for sabotaging his product liability claim." *See* Mtn. at 6:6-

13  7. Under the applicable standard of review, this Honorable Court must construe this admission

14  against Hopkins, the moving party. Therefore, per Hopkins' own admission, it is uncontested

15  Farmers faces an imminent threat of litigation, thereby making this controversy ripe for judicial

16  review. *See* Exhibit 1, Demand Letter.

### c.   There is an Absence of Any Unresolved Facts that Would Deprive a Declaratory Judgment of Finality

19       In a desperate effort to have the complaint dismissed on grounds of ripeness, the Motion

20  attempts to manufacture issues of fact allegedly undermining the ability of declaratory judgment to

> 9.    *Shields v. Norton*, 289 F. 3d 832, 835 (5th Cir. 2002) (emphasis added); *see also Williams
> v. Thomas*, 2010 WL 1005278 at *2 (D. Or. March 11, 2010) ("To meet the ripeness standard,
> petitioner must demonstrate a specific present harm, **or the threat of specific future harm**.")
> (emphasis added); *D'Andrea v. University of Hawaii*, 686 F.Supp.2d 1079, __ (D. Hawaii 2010),
> *quoting Maldonado v. Morales*, 556 F.3d 1037, 1044 (9th Cir.2009) ("At the time Plaintiff filed the
> First Action, the University had threatened to suspend him for both fourteen and thirty days as well
> as terminate him for alleged violations of the Executive Policy. Such 'genuine threat of enforcement'
> [are] sufficient to render a claim ripe for review.'"); *Nucor Corp. v. Aceros Y Maquilas De
> Occidente*, 28 F. 3d 572, 578-9 (7th Cir. 1994) ("We are in full agreement with the district court's
> analysis. First, we agree that the dispute clearly presented a ripe controversy. Once Aceros sent its
> notice letter of June 17, 1991, the disagreement was no longer an abstract question.").

1   determine the legal status of the parties with finality.  Specifically, the Motion identifies nine (9)

2   alleged factual issues related to a correspondence from Farmers dated April 6, 2009.  *See* Mtn. at

3   6:10-22.  The Motion would have this Honorable Court believe these alleged factual issues render

4   the controversy unfit for judicial review.  *Id.* at 6:23-25 ("Clearly, the claim for Declaratory Relief

5   that FARMERS seeks is tightly bound to the facts of this case, and that contract issues must first be

6   determined before any pure issues of law may be reviewed.").  Regrettably, in advocating this

7   position, the Motion rests upon a fundamental misunderstanding of the relationship between factual

8   issues and ripeness.  As demonstrated below, unresolved issues of fact may render a controversy

9   unfit for judicial review *only if* "... the requested declaration would not change the legal status of the

10  parties since such relation would depend on fact-findings yet to be made."  22A Am. Jur. 2d

11  *Declaratory Judgments* § 132 (2003).

12          In *Step-Saver Data Systems, Inc. v. Wyse Technology*, 912 F. 2d 643 (3rd Cir. 1990), the U.S.

13  Court of Appeals for the Third Circuit addressed the effect of unresolved factual issues upon ripeness

14  of declaratory actions.  In that case, plaintiff/appellant Step-Saver sold packaged computer systems

15  to doctors, lawyers and other professionals.  *Id.* at 645.  Step-Saver purchased from

16  defendant/respondent TSL an operating system known as the "Multi-Link Advanced" program, and

17  it purchased from defendant/respondent Wyse computer terminals.  *Id.*  Step-Saver combined the

18  operating system and the terminals into a final product sold to consumers.  *Id.*  Despite reassurances

19  from TSL and Wyse that the operating system and terminals were compatible, Step-Saver began

20  receiving customer complaints of system malfunctions.  *Id.*  Subsequently, twelve different lawsuits

21  were filed against Step-Saver by customers dissatisfied with the computer systems.  *Id.* at 645-6.

22          With twelve lawsuits pending against it, Step-Saver filed a complaint entitled "Complaint

23  for Declaratory Judgment," which sought declaratory judgment that TSL and Wyse were responsible

24  for Step-Saver's potential liability in the twelve consumer suits.  *Id.* at 646; *see also id.* at 645

25  ("Step-Saver sought a declaratory judgment that the defendants are liable *if* certain collateral actions

26  filed by Step-Saver's customers establish defects in the products sold by defendants to Step-Saver,

and after adaptation by Step-Saver, by Step-Saver to its customers.") (emphasis in original). The complaint was dismissed, and Step-Saver appealed. *Id.*

On appeal, the U.S. Court of Appeals for the Third Circuit had to determine whether Step-Saver's action for declaratory relief was ripe. *Id.* at 646. In doing so, the *Step-Saver* court considered whether declaratory judgment would be sufficiently conclusive to define and to clarify the legal rights or relations of the parties. *Id.* at 648. The *Step-Saver* court noted that Step-Saver's complaint rested upon several contingencies - *i.e.*, (a) whether the integrated computers were defective, and (b) if so, whether such defects were caused by the actions of TSL and Wyse or those of other parties, such as Step-Saver's actions in combining the components or the consumer's actions in using the equipment. *Id.* Amid these unresolved issues of fact, the *Step-Saver* court concluded the complaint was not ripe because declaratory judgment would not change or clarify the legal status of the parties:

> Thus, even if we issued the requested declaration, the legal status of the parties would not change (nor would it be clarified), because our declaration itself would be a contingency. Indeed, such a declaration would probably be an exercise in futility because Step-Saver and the defendants would be left to do battle on the issue of whether the "liability," for which we declared the defendants responsible, was really the liability that will be established in the consumer suits. As noted above, it would be possible, particularly given Step-Saver's significant role in combining the relevant equipment packages, for Step-Saver, but not the defendants, to be liable to the customers.

*Id.* at 648. Hence, *Step-Saver* demonstrates that unresolved factual issues may render an action for declaratory relief unfit for judicial review *only if* said issues would undermine the finality of declaratory judgment.

Here, the Motion alleges a correspondence from Farmers dated April 6, 2009, "... may be viewed as a separate contract, as an addendum to the existing Policy, a modification of the terms in the Policy with respect to retaining Mr. Hopkins' vehicle, and so forth." *See* Mtn. at 2:12-15. The Motion proceeds to identify nine (9) alleged unresolved factual issues related to this correspondence:

1.  Whether the correspondence is a contract that implicates the Policy;

2.  Whether the correspondence can be viewed as part of the Policy;

3.   Whether the correspondence may be viewed as an addendum to the Policy;

4.   Whether the correspondence is a separate agreement that can be viewed as a Farmers agreement;

5.   Whether the agreement is one between the individual who worked at Farmers and Hopkins;

6.   Whether Farmers' obligations as an insurer and their higher duty is by statute, regulation, common law, and/or implicated in parts of the Policy not included in the Complaint;

7.   Whether Farmers has acted in bad faith, by selling the vehicle, knowing of impending litigation and whether that bad faith claim rests on the Policy, on an independent claim, or by statute;

8.   Whether Farmers' obligation for good faith and fair dealing extends beyond the text of the Policy and applies to one who holds a Policy with them; *and*

9.   Whether Farmers must cover all defense costs regardless of the actual limit of coverage, which includes storing the vehicle that Farmers sold, knowing of the independent litigation, and so forth.

*Id.* at 6:10-27. In offering this laundry list of alleged factual issues, the Motion operates under the mistaken assumption that the mere identification of factual issues renders an action for declaratory relief unfit for judicial review. This is incorrect under *Step-Saver Data Systems*, for unresolved factual issues may render an action for declaratory relief unripe *only if* said issues would undermine the finality of declaratory judgment. Notably, the Motion wholly fails to offer any explanation as to how these alleged nine (9) unresolved factual issues would deprive a declaratory judgment of finality - *i.e.*, of the ability to resolve and to clarify the legal rights or relations of the parties. In the words of the United States Supreme Court, "[t]hat the dispute turns upon questions of fact does not withdraw it, as the respondent seems to contend, from judicial cognizance. The legal consequences flow from the facts and it is the province of the courts to ascertain and find the facts in order to determine the legal consequences. That is every day practice." *Aetna Life Ins. Co. v. Haworth*, 300 US 227, 242 (1937) (discussing the ripeness of an action for declaratory relief).

Contrary to the Motion's position, none of the alleged nine (9) unresolved factual issues would deprive a declaratory judgment of finality; in fact, a declaratory judgment would resolve and

extinguish each of them. For instance, the eighth issue is "[w]hether Farmers['s] obligation for good faith and fair dealing extends beyond the text of the Policy and applies to one who holds a Policy with them." By no means would the finality of declaratory judgment be affected by this alleged factual issue (if it can even be classified as an issue of fact, as opposed to one of law). A declaratory judgment, in fact, would resolve this alleged issue by defining and clarifying the legal rights or relations of the parties. Likewise, the sixth alleged issue is "[w]hether Farmers['s] obligations as an insurer and their higher duty is by statute, regulation, common law, and/or implicated in parts of the Policy not included in the Complaint." In addition to not affecting the finality of declaratory judgment, this alleged issue would be, in fact, resolved and extinguished by declaratory judgment. Wherefore, in identifying a laundry list of alleged factual issues, the Motion wholly fails to demonstrate the actual and live contractual dispute between the parties is unfit for judicial review, for it does not (nor can it) demonstrate how these alleged issues would affect the finality of declaratory judgment.

**2.    Farmers Would Suffer Undue Hardship if this Honorable Court Were to Withhold Judicial Review Because (a) It Will Continue to Face Demands by Hopkins, and (b) It Will Face the Imminent Threat of Litigation by Hopkins**

As aforementioned, "[t]he Declaratory Judgment Act was designed to relieve potential defendants from the Damoclean threat of impending litigation which a harassing adversary might brandish, while initiating suit at his leisure or never. The Act permits parties so situated to forestall the accrual of potential damages by suing for a declaratory judgment, once the adverse positions have crystallized and the conflict of interests is real and immediate." *Hunter Engineering*, 655 F.2d at 943 (9th Cir. 1981). If this Honorable Court were to withhold judicial review, then Farmers would continue to face an imminent threat of litigation from Hopkins. It would also continue to be harassed by continuous demands from Hopkins premised upon the mistaken belief Farmers owed him a contractual duty to maintain his vehicle. Once more, this fact is supported by the Motion's own admissions, for it explicitly states "[i]f this Court does not grant a Declaratory Judgment, the case will continue on as is." *See* Mtn. at 7:7-8. Dealing with Hopkins' harassing and meritless demands

is a strain on both Farmers and its counsel's valuable time and resources.  Wherefore, per the

Motion's own admissions, Farmers would suffer the hardship of Hopkins' continual demands if this

Honorable Court were to withhold judicial review.

**D.      NEITHER CHRYSLER LLC ("OLD CHRYSLER") NOR ITS TRUSTEE ARE NECESSARY AND INDISPENSABLE PARTIES**

The Motion alleges Farmers' complaint warrants dismissal under F.R.C.P. 19 because

Chrysler LLC (Old Chrysler) and/or its U.S. Trustee are necessary and indispensable parties.  *See*

Mtn. at 7:14 - 8:24.  This argument is highly unpersuasive and fatally flawed, for it fails to explain

how the joinder Old Chrysler and/or its U.S. Trustee is necessary for this Honorable Court to

determine the legal rights and relations of Farmers and Hopkins.  To the contrary, the participation

of neither Old Chrysler nor its U.S. Trustee is necessary for this Honorable Court to determine

whether Farmers owed a contractual duty to preserve Hopkins' vehicle.

The joinder of necessary and indispensable parties is governed by F.R.C.P. 19.  As the

Motion correctly notes, F.R.C.P. 19 mandates a two-party inquiry.  *See* Mtn. at 7:18-20.  This

Honorable Court must first determine whether Old Chrysler and/or its U.S. Trustee are necessary

parties, and if so, then it must determine whether those parties are indispensable.[10]  The

"indispensable" analysis consists of two sub-inquiries.  This Honorable Court must first determine

whether the necessary party can be joined, and if not, then it must determine whether the party is

indispensable so that in "equity and good conscience" the action should be dismissed.[11]  As

demonstrated in the "Standard of Review" section herein, Hopkins bears the burden of showing Old

Chrysler and/or its U.S. Trustee should be joined, and Hopkins must produce evidence showing the

---

10.      *In re County of Orange*, 262 F. 3d 1014, 1022 (9th Cir. 2001) ("Only if the court finds that an absent party is 'necessary' does it proceed to determine whether joinder is feasible, or if not, whether the party is 'indispensable.'").

11.      *Quileute Indian Tribe v. Babbitt*, 18 F. 3d 1456 (9th Cir. 1994) ("Rule 19 provides that a district court may dismiss an action if an absent party is determined to be 'indispensable.'  In applying Rule 19, the district court must first determine if an absent party is 'necessary.'  If a party is deemed to be necessary, the court must then determine if the party can be joined. If the party cannot be joined, the court finally must determine whether the party is indispensable so that in 'equity and good conscience' the action should be dismissed.") (internal citations omitted).

nature of the interests possessed by the absent parties and how their absence will impair such interests.   Being his argument is built solely upon the gossamer threads of speculation and conjecture, Hopkins simply cannot meet the heavy burden of showing how the joinder Old Chrysler and/or its U.S. Trustee is necessary for this Honorable Court to determine the legal rights and relations of Farmers and Hopkins.

### 1. The Participation of Neither Chrysler nor its U.S. Trustee is Necessary for this Honorable Court to Determine the Legal Rights and Relations of Hopkins and Farmers

"Under Federal Rule of Civil Procedure 19(a), 'a party is necessary in two circumstances: (1) when complete relief is not possible without the absent party's presence, or (2) when the absent party claims a legally protected interest in the action.'" *In re County of Orange*, 262 F. 3d at 1022, *quoting United States v. Bowen*, 172 F.3d 682, 688 (9th Cir.1999).  Indeed, this test is found in the explicit language of F.R.C.P. 19(a)(1), which reads as follows:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> (A)   in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B)   that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> > (i)   as a practical matter impair or impede the person's ability to protect the interest; or
> >
> > (ii)   leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Here, the Motion wholly fails to meet its burden of demonstrating how "complete relief is not possible without [Old Chrysler and/or its U.S. Trustee's] presence."  As aforementioned, on or around December 7, 2009 (*i.e.*, almost eight months after the bankruptcy of Old Chrysler), Hopkins sent Farmers a demand letter seeking compensation for "tortious breach of contract," breach of the covenant of good faith and fair dealing, negligent spoliation, and breach of fiduciary duty.  *See* Ex. 1. Interestingly, Hopkins did <u>not</u> "carbon copy" (cc) Old Chrysler or its U.S. Trustee on his demand

1   letter. This is affirmative evidence that at that time, Hopkins believed the actual and live contractual

2   dispute between Farmers and Hopkins could be resolved without the participation of Old Chrysler

3   or its U.S. Trustee. Quite frankly, Hopkins decided to raise this "red herring" argument only after

4   Farmers beat him in a race to the courthouse by filing its instant action for declaratory relief before

5   Hopkins could institute a bad faith suit against Farmers.

6          The bottom line is that neither Old Chrysler nor its U.S. Trustee were parties to the Policy,

7   so the legal rights and relations of Hopkins and Farmers with regards to the Policy may be fully

8   adjudicated without the participation of Old Chrysler and its U.S. Trustee. In other words, the

9   absence of these parties does not deprive this Honorable Court of the ability to "... accord complete

10  relief among existing parties." F.R.C.P. 19(a)(1)(A). Moreover, the legal effects of *In re Chrysler*

11  *LLC*, 576 F. 3d 108 (2nd Cir. 2009) upon Hopkins' potential claims against Farmers is purely a

12  matter of law, so the participation Old Chrysler or its U.S. Trustee is not necessary.

13         As for whether Old Chrysler and/or its U.S. Trustee claim a legal interest under F.R.C.P.

14  19(a)(1)(B), it must be noted Hopkins does not have standing to make any such claims on behalf of

15  Old Chrysler and/or its U.S. Trustee; to the contrary, only those parties may make that assertion. *In*

16  *re County of Orange*, 262 F. 3d at 1023 ("Second, Orange County cannot claim that the districts have

17  a legally protected interest in the action unless the districts themselves claim that they have such an

18  interest, and the districts have been silent."). Furthermore, there would be no basis for Old Chrysler

19  and/or its U.S. Trustee to make such a claim, for again, they were not parties to the Policy and have

20  no legal rights or interests thereto.

21         **2.      In the Highly Unlikely Event this Honorable Court Concludes Old Chrysler
              and/or its U.S. Trustee Are Necessary Parties, It May Join the U.S. Trustee to**
22            **this Action, as the Motion Expressly Concedes**

23         As aforementioned, this Honorable Court may proceed to the indispensable analysis *only if*

24  it concludes Old Chrysler and/or its U.S. Trustee are necessary parties. The "indispensable" analysis

25  consists of two sub-inquiries: (1)  whether the necessary party can be joined, and if not, then (2)

26  whether the absent party is indispensable so that the action should be dismissed in "equity and good

conscience."[12] Undermining its own objective of having Farmers' complaint dismissed, the Motion actually concedes that joinder of the U.S. Trustee to this action would be practicable. *See* Mtn. at 8:19-20 ("The US Trustee for Chrysler, LLC is certainly an individual **who may be reasonably joined.**") (emphasis added).   Hence, even in the highly unlikely event this Honorable Court concludes Old Chrysler and/or its U.S. Trustee are necessary parties, dismissal of Farmers' complaint would still not be warranted, for per the Motion's own admissions, this Honorable Court may simply order joinder of the U.S. Trustee.

**V.**

**CONCLUSION**

WHEREFORE, for the numerous, compelling reasons offered herein, Farmers respectfully requests that this Honorable Court deny the Motion in its entirety.

DATED this _____ **2** _____ day of June, 2010.

OLSON, CANNON
GORMLEY & DESRUISSEAUX

By:_____
JAMES R. OLSON, ESQ.
Nevada Bar No. 000116
MAX E. CORRICK II, ESQ.
Nevada Bar No. 006609
MATTHEW C. WOLF, ESQ.
Nevada Bar No. 010801
9950 West Cheyenne Avenue
Las Vegas, NV 89129
jolson@ocgd.com
mcorrick@ocgd.com
Attorneys for Plaintiff
FARMERS INSURANCE COMPANY
OF OREGON

12.      *Quileute Indian Tribe v. Babbitt*, 18 F. 3d 1456 (9th Cir. 1994) ("Rule 19 provides that a district court may dismiss an action if an absent party is determined to be 'indispensable.'  In applying Rule 19, the district court must first determine if an absent party is 'necessary.'  If a party is deemed to be necessary, the court must then determine if the party can be joined. If the party cannot be joined, the court finally must determine whether the party is indispensable so that in 'equity and good conscience' the action should be dismissed.") (internal citations omitted).

Page 25 of 26

## CERTIFICATE OF ELECTRONIC SERVICE

Pursuant to FRCP 5(b) and Section IV of the District of Nevada Electronic Filing Procedures, I certify that on the _2nd_ day of June, 2010, I served a true and correct copy of this document pursuant to Local Rule 16-3 to the following:

    Andrew Taylor, Esq.
    Accident Trial Lawyers, LLC
    3841 West Charleston Blvd., Suite 201
    Las Vegas, NV 89102

_____
An employee of Olson Cannon Gormley & Desruisseaux

# EXHIBIT 1

# EXHIBIT 1

*ACCIDENT TRIAL LAWYERS, LLC*

ATTORNEYS AT LAW
2801 WEST CHARLESTON BOULEVARD, SUITE 206
LAS VEGAS, NEVADA 89102

PHONE (702) 258-3005

FACSIMILE (702) 258-3457

December 7, 2009

*VIA FACSIMILE & CERTIFIED MAIL*

*Fax # 877-217-1389*
Famers Insurance Company
2401 NW 23rd Street, Suite 4A
Oklahoma City, OK 73107
Attn:   Drew Christmon – Auto Total Loss Specialists
        Amber Sharp - Supervisor

Farmers Insurance Company Corporate Offices
4680 Wilshire Blvd.
Los Angeles, CA 90010
Attn:   General Counsel

Downs and Associates
2249 Sequoia Drive
Aurora, IL 60506-6209
Attn:   Andrew Honaker, Esq. - Counsel

    Re:   Our Client:        Bradley Hopkins
          Your Insured:      Bradley Hopkins
          Claim No.:         0179030476
          Date of Accident:  January 6, 2009

Dear Messers and Madam:

    Please consider this our formal demand for compensation on behalf of Bradley Hopkins
for Farmer's tortious breach of contract in violating your obligations of good faith and fair
dealing towards your insured; negligent spoliation of evidence, and breach of fiduciary duty
pursuant to causes of action stemming from an automobile accident that occurred on January 6,
2009.

## FACTS

    The accident occurred on January 6, 2009 at approximately 4:12 p.m. in Las Vegas,
Nevada.  At that time, Mr. Hopkins was driving his 2002 Dodge Dakota pickup truck westbound
on Spring Mountain Road in the No. 3 travel lane.  As Mr. Hopkins approached Westwind Road,

*Farmers Insurance Company*
*Re: Bradley Hopkins*
December 7, 2009
Page 2 of 6

Barretto Ursal – driving a 2004 Honda Civic – attempted to turn right from southbound Westwind onto westbound Spring Mountain. Because his vehicle was so close to the Civic, Mr. Hopkins barely had enough time to apply the brakes before the front of his truck hit the front driver's side of the Civic. The Dakota left **74 feet of pre-impact skid marks. Additionally, the airbags failed to deploy**. The collision resulted in Mr. Hopkins' vehicle being a total loss.

On January 14, 2009, Mr. Drew Christmon was put on notice of a potential product liability claim against Chrysler Motor Corporation for failure of the airbags to deploy on behalf of Mr. Hopkins [See Exhibit 1]. At that time, we requested Farmers not damage, destroy or sell Mr. Hopkins vehicle during the pendency of the claim and/or lawsuit. Farmers agreed to secure the vehicle and confirmed this in a letter dated April 6, 2009 [See Exhibit 2]. Throughout the course of the last 11 months, during several follow up phone conversations with my staff and Mr. Christmon, this office requested the subject vehicle remain secure until such time as all inspections of said vehicle by all parties were completed. We were assured the vehicle would be preserved and held by Farmers. This office retained an accident reconstructionist and biomechanical expert to inspect the vehicle in preparation of our claim against Chrysler Motor Corporation. My paralegal called Insurance Auto Auction in Henderson, Nevada to confirm their hours for the expert to inspect the vehicle and was informed the vehicle was no longer there. On October 28, 2009, Mr. Christmon confirmed that the vehicle had been sold at auction to an individual in Tijuana, Mexico and that an "Andy" gave approval for the sell.

## LEGAL ISSUES

"Spoliation of evidence" is the intentional or negligent withholding, hiding, alteration or destruction of evidence relevant to a legal proceeding. It is a criminal act in the United States under Federal and most State law. Spoliation has two consequences: first, the act is criminal by statute and may result in fines and incarceration for the parties who engaged in the spoliation; second, case law has established that proceedings which might have been altered by the spoliation may be interpreted under a spoliation inference. The spoliation inference is a negative evidentiary inference that a finder of fact can draw from a party's destruction of a document or thing that is relevant to an ongoing or reasonably foreseeable civil or criminal proceeding: The finder of fact can review all evidence uncovered in as strong a light as possible against the spoliator and in favor of the opposing party.[1]

**Elements of the Cause of Action for Negligent Spoliation are**: 1. The existence of a potential civil action, 2. A legal or contractual duty to preserve evidence which is relevant to the potential civil action, 3. Destruction of that evidence, 4. Significant impairment in the ability to prove the lawsuit, 5. A causal relationship between the evidence destruction and the inability to prove the lawsuit, and 6. Damages.[2]

---

[1] Black's Law Dictionary, 8th Edition (2004).

[2] Spoliation of Evidence, Robert L. McCracken, Nash, Spindler, Dean & Grimstad.

*Farmers Insurance Company*
*Re: Bradley Hopkins*
December 7, 2009
Page 3 of 6

Farmers was put on notice in January of 2009 of the existence of a potential civil action for product liability against Chrysler Motor Corporation for failure of the air bags to deploy, causing Mr. Hopkins substantial bodily injury.

Because of that knowledge, it has been well established that Farmers had a duty to preserve such evidence. *See Fire Ins. Exchange v. Zenith Radio Corp.*, 103 Nev. 648, 651, 747 P.2d 911, 914 (1987), which states "even where an action has not been commenced and there is only a potential for litigation, the litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action." [Also citing *Wm. T. Thompson Co. v. General Nutrition Corp.* 593 F.Supp. 1443, 1455 (1984); *United States v. ACB Sales & Services, Inc.*, 95 F.R.D. 316, 318 (1982); *United Nuclear Corp. v. General Atomic Co.*, 629 P.2d 231, 309 (N.M. 1980)]. In *Thompson v. Owensby*, 704 N.E.2d 134, 137 (Ind.Ct.App. 1998) this court concluded "that an insurer's knowledge of a party' claim and the insurer's possession of key evidence created a relationship between the insurer and the party that weighed in favor of the insurer's duty to preserve the evidence."

In the matter of Bondu v. Gurvich, 473 So.2nd 1307 (Fla.3d DCA 1984), the court held that "the insurer owed a duty to the plaintiff, imposed by a contract, to preserve the evidence essential to a civil litigation." In the instant case, Farmers breached its contract and the fiduciary duty to its insured, Bradley Hopkins, by not preserving the evidence (the truck) essential to Mr. Hopkins' claims against Chrysler Motor Corporation.

Farmers allowed Mr. Hopkins' vehicle to be sold at auction to an individual in Tijuana, Mexico making it impossible for Mr. Hopkins to pursue his claims against Chrysler Motor Corporation. "In a product liability case, spoliation of the evidence destroys the ability of the plaintiff to prove his claim. Without the product, the plaintiff will not be able to prove the elements of an action for product liability. The plaintiff's expert will not be able to examine the product; the plaintiff will not be able to meet its burden of proving a defect existed; and the plaintiff will not be able to display the product to a judge or jury."[3] A leading case on the issue of spoliation of evidence is *Smith v. Superior Court*, 151 Cal.App.3d 491, 198 Cal.Rptr. 829 (1984). The *Smith* court held that "a prospective civil action in a products liability case is a valuable 'probable expectancy' that the defendants had interfered with plaintiff's opportunity to prove her lawsuit." The truck was obviously the focus of Mr. Hopkins' claims against Chrysler, without the truck as evidence; there is no claim against Chrysler.

## MR. HOPKINS' DAMAGES

Mr. Hopkins has suffered severe and permanent injuries as a result of the subject automobile accident. MRI results of the cervical and lumbar spines revealed the following significant medical conditions:

---

[3] "Spoliation of Evidence: The Next Frontier for Insurance Coverage Battles" January 2001, IRMI.com

*Farmers Insurance Company*
*Re: Bradley Hopkins*
December 7, 2009
Page 4 of 6

- Multi-level disc desiccation
- **Post-surgical changes** at the C5-6 level, along with left-sided uncovertebral arthrosis resulting in mild to moderate ipsilateral neural foraminal stenosis
- C2-3 central **disc herniation** and minimal right neural foraminal stenosis
- C3-4 central **disc herniation** and minimal bilateral neural foraminal stenosis
- C4-5 central **disc herniation** and mild bilateral neural foraminal stenosis
- C6-7 right paracentral disc osteophyte complex and mild to moderate right neural foraminal stenosis.
- C7-T1 central and right dorsolateral **disc herniations** with moderate to severe right neural foraminal stenosis and mild left neural foraminal stenosis.
- L2-3 annular disc bulging and facet arthrosis with disc desiccation
- L3-4 right far lateral **disc herniation of protrusion type** with disc desiccation
- L4-5 **annular disc bulging** with foraminal encroachment
- L5-S1 **annular disc bulging**

On January 28, 2009, Mr. Hopkins consulted with Robert Bien, D.O., of Nevada Pain Management. Dr. Bien's impression was that of Status Post Motor Vehicle Accident with disc herniation and degeneration, cervical and lumbar. Dr. Bien scheduled Mr. Hopkins for cervical and lumbar epidural injections in an attempt to alleviate some of Mr. Hopkins pain. On a follow up visit with Dr. Bien on March 2, 2009, Mr. Hopkins reported the injections only gave relief for about 3 days, and was forced to start using a cane to ambulate. Dr. Bien suggested a follow up with a spinal surgeon.

On March 12, 2009, Mr. Hopkins consulted with Andrew Cash, M.D. of Desert Institute of Spine Care. After a full review of the records, diagnostic studies, and physical exam of Mr. Hopkins, Dr. Cash is of the following opinion:

"This patient has failed conservative measures since the time of the accident, and has good relief of pain, although temporarily, with the injections. His neck pain is worse and he has 50-50 neck and arm pain. He has findings consistent with radiculapathy at C6-7 and C-7-T1 and should undergo anterior cervical diskectomy and fusion at those two levels. He will require exploration of the level above. He will be sent for prep testing. In regards to his lumbar spine, we will await further workup and recommendations until after his cervical surgery."

Conservative estimates of Mr. Hopkins cervical surgery range from *$100,000 to $120,000*, which includes the surgical facility, surgeon costs, medications, anesthesiologists, and hospital stay. As noted by Dr. Cash, his lumbar spine will need additional work up, and more than likely, will require surgery to repair the damage.

On May 26, 2009, Robert Bien, M.D. stated that Mr. Hopkins is now on chronic daily pain medication in order to control his pain and is only able to ambulate with the use of a cane. Currently his pain medications cost approximately $300 to $400 per month.

*Farmers Insurance Company*
*Re: Bradley Hopkins*
December 7, 2009
Page 5 of 6

Dr. Bien goes on to state that Mr. Hopkins is considered totally disabled both due to his condition, as well as his level of pain medications taken on a daily basis. [See Exhibit 3].

### *Mr. Hopkins is only 42 year old.*

As set forth earlier, Mr. Hopkins has been disabled since the date of the accident and thus unable to work. Mr. Hopkins is a union carpenter who, until the time of the accident, was working at least 40 hours a week (sometimes more) with Exhibit Fair International, Inc. His rate of pay at that time was $23.00 per hour Mr. Hopkins has now has been out of work since the subject accident, with no anticipated return date. Thus, **to date** his lost wages is over *$40,000.00*, without the possibility of returning to the career he once had, requiring re-education and training in a different field.

In order for Mr. Hopkins to provide for himself and his family in the manner he was accustomed, he looked into retraining in two different fields. An undergraduate degree at the University of Las Vegas in a Bachelor of Science Degree in Computer Science or Construction Management would costs approximately *$22,000 to $23,000*.

In *Miller v. Allstate Ins. Co.*, 573 So.2d 24 (Fla.App. 1990), the court held that "It is now an accepted principle of contract law, that recovery will be allowed where a plaintiff has been deprived of an opportunity or chance to gain an award or profit even where damages are uncertain." In this particular matter, damages are undeniable. Mr. Hopkins suffered severe and permanent injuries and lost wages. He will require a lifetime of medical treatment, surgery, rehabilitation, job re-training and medications as a result on the January 6, 2009, automobile accident.

## CONCLUSION

The issues at hand are serious ones that I intend on pursuing vigorously. Farmers has committed an irrefutable negligent error causing their insured, Bradley Hopkins to suffer insurmountable damage. *Case law on this matter is clear and convincing in jurisdictions across the United States.*

Based on the foregoing, we would be willing to settle this matter only pre-litigation for the sum of $3,000,000.00 (Three Million Dollars) as full and final settlement of Mr. Hopkins' claims against Farmers Insurance Company. If we are unable to settle, understand that all causes of actions mentioned above, along with special, exemplary and punitive damages, and the costs of suit, will be filed immediately in a Complaint against Farmers Insurance Company and Zurich Financial Services

////

////

*Farmers Insurance Company*
*Re: Bradley Hopkins*
December 7, 2009
Page 6 of 6

Please be advised that this is a time-limit demand. If we do not hear from you within 10 (tens) days of the date of this letter, the subject Complaint will be filed.

Your professional courtesy and cooperation are greatly appreciated. Please contact me with any questions you may have.

Very truly yours,

ACCIDENT TRIAL LAWYERS, LLC

Andrew D. Taylor, Esq.

ADT/iw
Encl.